COMMONWEALTH of Pennsylvania, Appellee

v.

Charles F. HOLDER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.

Filed Jan. 8, 2001.

Jeanette D. Dickerson, Norristown, for appellant.

Adrienne Duvall, Asst. Dist. Atty., Norristown, for Com.

Before JOYCE, J., OLSZEWSKI, J. and CIRILLO, President Judge Emeritus.*

OLSZEWSKI, J.:

¶ 1 Charles F. Holder appeals from the judgment of sentence entered March 24, 2000. Appellant was convicted of rape by forcible compulsion and threat of forcible compulsion, simple assault, and aggravated assault. The trial court sentenced him to eight and one-half to twenty years imprisonment for rape by forcible compulsion, consecutive to all sentences currently being served, and to a concurrent term of six to twelve years imprisonment for aggravated assault. We affirm.

¶ 2 Appellant raises two issues for our review:

1. Did the trial court err in referring to [appellant's] Gagnon hearing and Gagnon violation hearing in the presence of the jury and polling the jurors to determine whether any knew the meaning of the term?

2. Did the trial court err in denying [appellant's] motion to present evidence of a prior rape allegation by the victim?

Brief of Appellant at 5.

¶ 3 Appellant's first argument is based on the trial court's mistaken reference to appellant's Gagnon hearing in the presence of the jury. The court asked the prosecutor, "What was the date of the Gagnon hearing?"; the prosecutor answered and

defense counsel moved for mistrial. N.T. Trial, 1/6/00, at 207. The court then polled the jurors and determined that no one knew the meaning of the term Gagnon violation, then the judge issued a curative instruction.[1] N.T. Trial, 1/6/00 at 210–212. All the jurors stated that they could follow the court's instruction. N.T. Trial, 1/6/00 at 212–3.

■ ¶ 4 In Pennsylvania, evidence is not admissible solely to show a defendant's bad character or propensity for continuing criminal acts. See Commonwealth v. Seiders, 531 Pa. 592, 614 A.2d 689 (1992). "However, not all references which may indicate prior criminal acts warrant reversal. Mere passing references 'to prior criminal activity will not require reversal unless the record illustrates definitively that prejudice resulted from the reference.'" Commonwealth v. Bracey, 541 Pa. 322, 662 A.2d 1062, 1069 (1995) (citation omitted).

The decision of whether to declare a mistrial in a criminal prosecution is within the sound discretion of the trial court and will not be reversed on appeal absent abuse of discretion. Moreover, this Court has held that the extreme remedy of a mistrial is not automatically required if it is determined that the inference of prior criminality was innocuous and that effective curative instructions were immediately given. Indeed, a mistrial must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial. Consideration of all the circumstances is necessary in determining whether an instruction can cure

---

* Cirillo, P.J.E. did not participate in the consideration or decision of this case.

1. "Now, the fact that I made the statement was inappropriate on my part and it was accidental, and I apologize for that. I'm going to tell you right now you have to strike that term from your mind. I want to know if there is anyone here who cannot do that; and if you cannot—and I want you to search your hearts—I want you to raise your hand."

"All right. I see no hands. Also, I'm going to instruct you that you are not to make any inquiries or ask anyone or discuss that term during the course of this proceeding or during the deliberations, or at any time up to that. And that includes talking to anyone outside or talking to your family members." N.T. Trial, 1/6/00 at 212.

the exposure of improper evidence to the jury.

*Commonwealth v. Vazquez*, 421 Pa.Super. 184, 617 A.2d 786, 787–8 (1992) (citations omitted).

Trial courts have broad discretion to grant or deny a new trial. The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

\* \* \*

[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

If the appellate court agrees with the determination of the trial court that a mistake occurred, ... [t]he appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial... An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

\* \* \*

A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error.

*Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121–3, 1127 (2000) (citations omitted).

¶ 5 Upon mention of the Gagnon hearing, the trial court immediately polled the jury and issued curative instructions. Appellant cannot demonstrate that the decision to issue an instruction rather than declare a mistrial was manifestly unreasonable, arbitrary, or capricious. The judge individually polled the jurors, ascertained that they didn't understand the meaning of the term, and then requested further assurances that they would disregard the mention of Gagnon as part of their consideration of the case. There is no evidence on the record that the trial court refused to grant a mistrial due to partiality, prejudice, bias, or ill will. Therefore, appellant's first argument lacks merit; there was no abuse of discretion.

¶ 6 Appellant's second argument, which is an issue of first impression, stems from the trial court's decision not to permit prior Gagnon testimony. Appellant filed a Motion in Limine on the Admissibility of Evidence to determine if a prior statement made by the victim at appellant's Gagnon hearing would be admissible at trial. The trial court determined that appellant was collaterally estopped from raising this issue. At appellant's Gagnon hearing, the judge determined that the testimony appellant sought to admit was not admissible based on the Rape Shield Law and the rules on hearsay evidence.

¶ 7 "Collateral estoppel is 'issue preclusion' which does not automatically bar subsequent prosecution but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246, 251 (1988).

Pennsylvania courts have adopted a three-step approach in application of the doctrine of collateral estoppel: 1) while the offenses charged in the two offenses need not be the same, the issues must be similar and material; 2) collateral estoppel only bars redetermination of

those issues necessarily determined and litigated between the parties in the first proceeding; and 3) collateral estoppel requires a final judgment in the first proceeding.

*Commonwealth v. Garcia,* 746 A.2d 632, 637 (Pa.Super.2000). It is the sound policy of our courts to avoid having judges of equal jurisdiction, sitting on the same bench, overruling each other on the same record. *See Commonwealth v. Lagana,* 510 Pa. 477, 509 A.2d 863, 866 (1986) (discussing the doctrine of coordinate jurisdiction). It is beneficial to discourage the relitigation of the same issue on the same evidence, while at the same time preventing judges of equal jurisdiction from entering diverse rulings on the same evidence. *See id.*

¶ 8 Both the judge at the Gagnon hearing and the judge at the criminal trial were bound by rules of the Rape Shield Law. They were judges of equal jurisdiction, and the same issue had been finally litigated at the earlier hearing. As such, the trial court was collaterally estopped and did not err by refusing to rehear the issue.

¶ 9 Judgment of sentence affirmed.